IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| JENNIFER R., § | |
|    PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 5:24-CV-207-H-BK |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
|    DEFENDANT. § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Plaintiff's appeal of the denial of her application for Social Security supplemental income and disability benefits, Doc. 1, is before the undersigned United States magistrate judge for findings and a recommended disposition. For the reasons outlined here, the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

   **A. Procedural History**

Plaintiff seeks judicial review of the May 2024 final decision of the Commissioner of Social Security ("Commissioner") denying on remand her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). Doc. 1. In July 2018, Plaintiff filed for DIB and SSI, claiming that she had been disabled since September 2016. Doc. 18 at 1. After being denied benefits, Plaintiff appealed to the United States District Court for the District of Colorado under 42 U.S.C. § 405(g), which subsequently granted the Commissioner's unopposed motion for remand for further proceedings. Doc. 14-2 at

962-71.[1]  On remand, the ALJ held an administrative hearing in November 2022 and a supplemental hearing in September 2023.  *See* Doc. 14-2 at 815-53; Doc. 14-2 at 854-91. Subsequently, on May 9, 2024, the ALJ again found Plaintiff not disabled.  Doc. 14-2 at 780-800.  That decision is under review here.  Doc. 18 at 2.

### B. Factual History

Plaintiff was 36 years old at the alleged onset of her disability and has a high school education.  Doc. 18 at 2; Doc. 14-1 at 182; Doc. 14-1 at 231.  Plaintiff's past relevant work included the composite job of jewelry inspector and hand packager in 2014 and 2015, a defect picker at a meat packing plant from 2005 to 2007, and a cashier at a convenience store in 2003 and 2004.  Doc. 14-2 at 799; Doc. 14-2 at 829-34.  Plaintiff claimed that she suffered from back problems, type II diabetes, depression, anxiety, Guillain-Barré Syndrome, neuropathy, and seizures.  Doc. 14-1 at 230.  Further, Plaintiff's medical records reflect a history of other medical impairments such as hypertension, hyperlipidemia, asthma, migraines, acute hypertension, seizures, and carpel tunnel.  Doc. 14-2 at 784-86.

### C. Plaintiff's Testimony

At the November 2022 and September 2023 administrative hearings, Plaintiff testified as to her medical history, which included anxiety, abdominal pains, and back problems.  Doc. 14-2 at 823-26.  Plaintiff stated that she had a "massive stroke" and subsequently attended physical therapy.  Doc. 14-2 at 837-38.  However, Plaintiff reported that she no longer has issues with her

---

[1] After initially applying for DIB and SSI, Plaintiff moved from Texas to Colorado, Doc. 14-1 at 119, and properly appealed the ALJ's initial determination to the United States District Court for the District of Colorado.  42 U.S.C. § 405(g) ("Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .").  However, at the time of the second ALJ hearing, Plaintiff had relocated to Plainview, Texas, and, thus, filed her second appeal in this Court.  *Id.*; Doc. 1 at 1.

wrist and had stopped seeking mental health treatment. Doc. 14-2 at 838-41. Plaintiff confirmed that she cooks, cleans, shops for groceries, and does laundry for her household. Doc. 14-2 at 842-44. As for her past relevant work, Plaintiff testified that during the pendency of her appeal of the prior unfavorable determination, she worked part-time as a code enforcer for the State of Colorado before deciding to move back to Texas. Doc. 14-2 at 826-27. As a code enforcer, Plaintiff issued citations for overgrown weeds and other property condition issues, and for loose animals. Doc. 14-2 at 791. Plaintiff's duties also included appearing in court when required. Doc. 14-2 at 792.

At the supplemental hearing in September 2023, Plaintiff provided new, and sometimes conflicting, testimony. Doc. 14-2 at 861-77. For example, she testified that an orthopedist had since the previous hearing diagnosed her with carpel tunnel syndrome and her back pain had worsened. Doc. 14-2 at 861-65. And when questioned by the ALJ regarding her past relevant work, Plaintiff testified that she did not lift "any weight" in her position as meat packer, Doc. 14-2 at 879, in direct conflict with her November 2022 testimony that she lifted anywhere between ten to fifty pounds as a meat packer, Doc. 14-2 at 846.

### D. Vocational Expert Testimony

At the September 2023 supplemental hearing, a vocational expert ("VE") testified that Plaintiff could perform her past work as meat packer (as actually performed), and cashier (as generally and actually performed). Doc. 14-2 at 882. The VE also opined that a person with the hypothetical restrictions proffered by the ALJ would be able to perform the composite job of jewelry inspector and hand packager. Doc. 14-2 at 882.

### E. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity since September 1, 2016. Doc. 14-2 at 784. The ALJ also found that Plaintiff had the severe impairments of: (1) degenerative disc disease of the lumbar spine, (2) diabetes mellitus, (3) morbid obesity, (4) depression, and (5) anxiety. Doc. 14-2 at 784. The ALJ concluded, however, that none of Plaintiff's impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations. Doc. 14-2 at 786.

The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform "light work." Doc. 14-2 at 788. Specifically, the ALJ found that:

> [The] claimant has the residual functional capacity to . . . lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant may frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant can tolerate frequent exposure to work involving extreme cold and to extreme heat, to working at unprotected heights or around dangerous, unprotected major manufacturing machinery. The claimant can tolerate frequent exposure to concentrated atmospheric conditions . . . . The claimant can understand, remember, and carry out more than simple but less than complex tasks that can be learned and mastered up to six months' time or less. The claimant can work in proximity to others, tolerating occasional interaction with supervisors, coworkers, and the general public. At such levels, the claimant can maintain concentration, persistence or pace throughout a normal workday or workweek, can make routine work-related decisions, can plan and set goals, can adapt to routine workplace changes, can travel, and can recognize and avoid ordinary workplace hazards.

Doc. 14-2 at 788-89. Based on this RFC, the ALJ concluded that Plaintiff is capable of performing certain past relevant work she performed within the past 15 years, including (1) meat packer (as actually performed by Plaintiff); (2) cashier (as performed generally and actually by Plaintiff); and (3) the composite job of hand packager and jewelry inspector (as performed

4

generally and actually by Plaintiff). Doc. 14-2 at 799. The ALJ thus found Plaintiff not disabled. Doc. 14-2 at 800.

## II. STANDARD OF REVIEW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). If the claimant meets her burden, the burden then shifts to the Commissioner to "provide the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (cleaned up). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary

choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

## III. ANALYSIS

Plaintiff argues that remand is warranted on two grounds: (1) the ALJ's RFC finding is inconsistent with her finding of a severe mental impairment, and (2) the ALJ "made a series of legal errors in finding that [Plaintiff] was not disabled because she could perform her past relevant work." Doc. 18 at 1. Plaintiff's arguments fail.

### A. ALJ's RFC Assessment Is Supported by Substantial Evidence.

Plaintiff argues that the ALJ's RFC finding failed to incorporate Plaintiff's limitations due to her mental impairments. Doc. 18 at 4-8. The Commissioner counters that "limitations identified in the 'Paragraph B' criteria are not an RFC assessment and are simply used to rate the severity of mental impairments at steps two and three of the sequential evaluation process." Doc. 24 at 6.

As relevant to this issue, the ALJ found that Plaintiff "can understand, remember, and carry out *more than simple but less than complex tasks* that can be learned and mastered in up to six months' time or less." Doc. 14-2 at 789 (emphasis added). Plaintiff contends that the ALJ erred when, "instead of limiting the capacity to perform simple work . . . , the ALJ explicitly found that Plaintiff is capable of **more than** simple work[.]" Doc. 18 at 6 (emphasis in original). Plaintiff argues that the presence of a severe mental impairment necessarily means that the claimant's ability to perform "basic work activities" is "significantly" limited. Doc. 18 at 6-7 (citing 20 C.F.R. §§ 404.1522(a), 416.922(a) (providing that a mental impairment is only severe if it "significantly limits the claimant's ability "to do basic work activities")). Plaintiff thus reasons that the ALJ committed legal error in finding that Plaintiff had *severe* mental

impairments, which necessarily placed *moderate* limitations in all categories of her mental abilities, yet failing to conclude as a consequence that there were limitations on Plaintiff's ability to understand, carry out, and remember even *simple* tasks. Doc. 18 at 6. The Court's review reveals that Plaintiff obviously misapprehends and conflates the applicable standards, however.

"[A] finding that a claimant has a severe impairment at step two is different from the ALJ's assessment of the claimant's RFC." *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-CV-930-BP, 2025 WL 1268116, at *3 (N.D. Tex. May 1, 2025) (Ray, J.) (citing *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001)). "It is true that 'the regulations require the ALJ to evaluate the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe.'" *Roberts*, 2025 WL 1268116, at *4 (quoting *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (Lane, J.)) (cleaned up). But an ALJ's assessment of the paragraph B criteria resulting in moderate limitations in four broad categories of the plaintiff's mental abilities is not equivalent to an RFC assessment by the ALJ. SSR 96-8p, 1996 WL 374184, at *4. "Instead, it rates the severity of [Plaintiff's] mental impairments at steps two and three of the sequential evaluation process." *Roberts*, 2025 WL 1268116, at *4.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments[.]" SSR 96-8p, 1996 WL 374184, at *4. These functions consider the plaintiff's abilities to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). However, the regulations "do not specifically require the

ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into the RFC determination." *Roberts*, 2025 WL 1268116, at *3 (quoting *Patterson*, 2009 WL 3110205, at *5).

Here, the ALJ's RFC determination limiting Plaintiff to the performance of "simple but less than complex tasks" is not inconsistent with the ALJ's "special technique" evaluation that Plaintiff was moderately limited in her abilities in all four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing herself. Doc. 14-2 at 787-89; *see Julie H. v. Kijakazi*, No. 1:22-CV-145-H-BU, 2023 WL 8183822, at *5 (N.D. Tex. Nov. 27, 2023) (Hendrix, J.) (affirming ALJ's determination that Plaintiff could perform "detailed, but not complex tasks" and semi-skilled work despite moderate mental limitations); *Roberts*, 2025 WL 1268116, at *3-4 (finding that ALJ properly considered the plaintiff's mental limitations in RFC determination and reiterating that a finding of a severe impairment at step two is distinct from the ALJ's RFC assessment). Further, the ALJ's FCR determination is supported by substantial evidence as the ALJ "properly discussed the evidence in the record in making [the] RFC determination, explained [the] reasoning for the RFC determination, and exercised [ ] responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC that the record most supported." *Buescher v. Comm'r, Soc. Sec. Admin.*, No. 4:24-CV-538-BJ, 2025 WL 1931948, at *12 (N.D. Tex. July 14, 2024) (Cureton, J.); *see also* Doc. 14-2 at 786-99 (ALJ's explanation for Plaintiff's moderate mental limitations and basis for RFC finding).

Finally, as Defendant correctly notes, Plaintiff does not cite any legal authority requiring remand under analogous circumstances. Doc. 24 at 7; *Roberts*, 2025 WL 1268116, at *4.

Indeed, Plaintiff's argument has been repeatedly rejected by this Court. *See, e.g.*, *Julie H.*, 2023 WL 8183822, at *5 ("A finding that the plaintiff has a severe impairment does not prevent a finding that the plaintiff can also complete unskilled and semi-skilled work."); *Roberts*, 2025 WL 1268116, at *5 (collecting cases and finding that the ALJ properly accounted for the plaintiff's mental limitations); *Buescher*, 2025 WL 1931948, at *8-12 (same); *James S. v. Dudek*, No. 4:24-CV-588-BU, 2025 WL 1869440, at *3-5 (N.D. Tex. July 7, 2025) (Parker, J.) (same).

### B. The ALJ Did Not Legally Err When Applying a Now-Superseded 15-Year Lookback Period.

Plaintiff argues that remand is warranted because the ALJ relied on the now superseded 15-year lookback period for past relevant work when determining whether Plaintiff is disabled. Doc. 18 at 12-13; *see* Doc. 14-2 at 783 (ALJ's reference to the 15-year lookback period). Put simply, Plaintiff posits that the past work that the ALJ found relevant falls outside the now applicable five-year lookback period. *See* Doc. 18 at 12 (arguing that it has been nine years since Plaintiff last worked in any of the occupations the ALJ found relevant).

At the time of the decision under review here, the applicable regulations defined "past relevant work" as "work that you [the claimant] have done within the past *15 years*, that was substantial gainful activity, and that lasted long enough for you to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1) (2012) (emphasis added) ("2012 Rule"). However, one month after the ALJ issued her decision, new regulations became effective that now define past relevant work as "work that you have done within the past *five years* that was substantial gainful activity and that lasted long enough for you to learn to do it." *See* Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work, 2024 WL 1665873, 89 Fed. Reg. 27653, 27655 (Apr. 18, 2024) (codified at 20 C.F.R. § 404.1560(b) (2024) (effective June 22, 2024)) ("2024 Rule").

9

As the 2024 Rule was not yet in effect at the time of the ALJ's decision, the ALJ applied the 15-year lookback period to Plaintiff's case. Doc. 14-2 at 783. Plaintiff's argument that the ALJ committed legal error by doing so lacks authoritative legal support. Upon review, the Court finds the two cases Plaintiff cites in support, U*nited States v. Schooner Peggy*, 5 U.S. 103 (1801) and *Hicks v. Califano*, 600 F.2d 1048 (4th Cir. 1979), neither analogous nor persuasive. *Schooner Peggy* concerns the United States' condemnation of a French war ship and whether the ship had to be restored under a treaty between the United States and France. *Schooner Peggy*, 5 U.S. at 108-10. In *Hicks*, which involved a different Social Security Administration rules change that the parties agreed should be applied, the court simply ratified the parties' agreement by remanding the case. *Hicks*, 600 F.2d at 1050.

Notwithstanding the foregoing, the Court's own research revealed that while the Court of Appeals for the Fifth Circuit has yet to weigh in on the issue, at least two other federal district courts have addressed the applicability of the 2024 Rule's five-year lookback provision in cases decided prior to its stated effective date. Neither case presents the same procedural posture as the instant, however, and most importantly, neither cites to nor announces a rule that requires the applicability of the 2024 Rule's five-year lookback provision prior to its stated effective date.

In both *Ruiz v. Bisignano*, No. SA-24-CV-1039-XR-HJB, 2025 WL 2046416, at *4 (W.D. Tex. June 29, 2025), *adopted by* 2025 WL 2042773 (July 21, 2025), and *Henrickson v. O'Malley*, No. 8:23-CV-320, 2024 WL 4169548, at *1 (D. Neb. Sept. 12, 2024), the district courts remanded their respective cases that had been decided under the 15-year lookback period in effect at the time of the ALJ's decision. However, in *Henrickson* (later cited by *Ruiz*), the court's decision was one of judicial expediency, since the parties had already agreed to a remand to permit the application of the 2024 Rule. 2024 WL 4169548, at *2. In *Ruiz*, the 2024 Rule

10

establishing a five-year lookback period came into effect while the case was still before the Appeals Council, which erroneously stated in its letter denying review that "it had 'applied the laws, regulations and rulings in effect as of the date we took this action,'" when that clearly was not the case. 2025 WL 2046416, at *2.

Importantly, neither case suggests that the ALJ was wrong to apply the lookback rule in effect at the time of her decision. And in its role as court of review, the undersigned finds no basis for this Court to assign error to the ALJ's decision to apply the rules in effect at the time of her decision. Indeed, the Commissioner's policy interpretation of the 2024 Rule suggests it would be improper to do so:

> We expect that Federal courts will review our final decisions using the rules that were *in effect at the time we issued the decisions*. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of the [2024 Rule], we will apply [the 2024 Rule] to the entire period at issue in the decision we make *after the court's remand*.

SSR 24-2p, 2024 WL 2846571, 89 Fed. Reg. 48479 n.1 (June 6, 2024) (emphasis added).

### C. The ALJ's Finding That Plaintiff Could Perform Her Past Relevant Work Is Supported by Substantial Evidence.

Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work as a meat packer as actually performed, jewelry inspector and hand packager (comprising the composite job) as actually and generally performed, and cashier as generally and actually performed. Doc. 18 at 8-12. In response, the Commissioner contends that the ALJ's findings are supported by substantial evidence, Doc. 24 at 7-10, and the Court agrees.

Plaintiff has the burden to establish that she cannot perform her past relevant work. *See Webster*, 19 F.4th at 718 (stating that the claimant bears the burden at step four to demonstrate an inability to perform past relevant work). In determining whether a plaintiff retains the RFC to perform her past relevant work, the ALJ can look to either (1) the job duties peculiar to an

11

individual job as the plaintiff actually performed it, or (2) the functional demands and job duties of the occupation as generally performed by employees throughout the national economy. *Britton v. Saul*, 827 F. App'x 426, 431 (5th Cir. 2020) (citing SSR 82-62, 1982 WL 31386, at *1-2 (S.S.A. Jan. 1, 1982)).  Moreover, "an ALJ may consult a VE to determine the proper characterization of the claimant's past work, and whether she can return to that past work as she actually performed it or whether she can perform the work as it is generally performed in the national economy." *Holland v. Colvin*, No. 3:14-CV-2964-K-BH, 2015 WL 5437727, at *11 (N.D. Tex. Aug. 31, 2015) (Ramirez, J.) (citations omitted), *adopted by* 2015 WL 5439051 (Sept. 15, 2015) (Kinkeade, J.).  "In general, a VE's testimony is substantial evidence on which an ALJ may base a finding that the claimant can still perform her past relevant work." *Brown v. Astrue*, No. 3:08-CV-255-D, 2009 WL 64117, at *5 (N.D. Tex. Jan. 12, 2009) (Fitzwater, C.J.).

At the outset, the Court notes that Plaintiff's attorney did not question the VE at the September 2023 supplemental hearing regarding any conflict between the ALJ's findings, Plaintiff's testimony, and the record evidence.  Doc. 14-2 at 889.  Consequently, Plaintiff has waived the right to challenge any purported conflict at this stage.  *See Bartlett v. Colvin*, No. 3:14-CV-1595-BN, 2015 WL 4041848, at *6 (N.D. Tex. July 2, 2015) (Horan, J.) ("Plaintiff cannot challenge in this Court any implied conflict that he failed to raise at the hearing."). Plaintiff's counsel's failure to question the VE on any alleged conflicts also supports the ALJ's reliance on the VE's testimony.  *Id.*  Nevertheless, the Court considers the substance of Plaintiff's claims of error.

*Meat Packer:* Plaintiff argues that the ALJ's determination that Plaintiff could perform her past relevant work as a meat packer is inconsistent with the administrative record.  Doc. 18 at 8-9.  Specifically, Plaintiff contends that she could not perform the meat packer position as

actually performed because it was a medium-exertion job, while her RFC was limited to light work. Doc. 18 at 8-9; Doc. 14-2 at 788 (finding that Plaintiff can perform light work). In support of this argument, Plaintiff points to the testimony of the various VEs throughout the pre- and post-remand proceedings, as well as Plaintiff's work history report, and highlights the differing conclusions on the level of work this position required. Doc. 18 at 8-9; *see* Doc. 14-1 at 70 (VE testifying at the March 2020 hearing that Plaintiff "probably" performed the meat packer position at "the medium to heavy physical demand level"); Doc. 14-2 at 846 (VE stating at the November 2022 hearing that the meat packer position involved a medium level of exertion); Doc. 14-2 at 880-81 (VE stating at the supplemental hearing that the meat packer position generally involved a medium level of exertion but was actually performed at a light level of exertion). Thus, Plaintiff alleges that "the ALJ did not acknowledge, let alone resolve, inconsistencies in the evidence as to how [Plaintiff] performed her past work as a meat packer." Doc. 18 at 9.

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citation omitted). Here, however, only the post-remand VE testimony is relevant. Further, Plaintiff's own testimony at the supplemental hearing supports the ALJ's finding that she performed the job at a light level, averring that she "wasn't lifting any weight." Doc. 14-2 at 879. The record reflects that the ALJ weighed all the evidence and properly relied on the VE's testimony. *See* Doc. 14-2 at 789-99 (explaining reason for finding that Plaintiff could perform light work). At bottom, conflicts in the evidence are for the Commissioner, not the Court, to resolve.

*Cashier:* Plaintiff argues that the ALJ's finding that Plaintiff was limited to "occasional social interaction" precludes her ability to be a cashier. Doc. 18 at 10-11. Like in her argument

13

regarding her position as a meat packer, Plaintiff points to inconsistencies in VE testimony (pre- and post-remand) regarding Plaintiff's ability to perform work as a cashier. Doc. 18 at 11. Based on these purported inconsistencies, Plaintiff contends that the ALJ's "failure to acknowledge evidence contrary to her findings requires remand for further proceedings." Doc. 18 at 11.

Plaintiff's arguments fail because the ALJ identifies evidence supporting the conclusion that Plaintiff is capable of interacting with the public, including Plaintiff's own testimony that she gets out, shops, and sees friends. Doc. 14-2 at 792-94. The ALJ also properly relied on the VE's opinion that the cashier job would not exceed Plaintiff's RFC.

*Composite Job:* Plaintiff argues the ALJ erred by finding that Plaintiff could perform her past relevant composite job of a jewelry inspector and hand packager. Doc. 18 at 9-10. Once more, Plaintiff's argument is unavailing.

The ALJ categorized one of Plaintiff's past relevant positions as a composite job consisting of a jewelry handler and a hand packager. Doc. 14-2 at 799. Plaintiff's argument centers on the ALJ's finding that Plaintiff could perform the composite job consisting of jewelry handler and hand packager "as generally performed." Doc. 18 at 9-10. Plaintiff argues that, because the ALJ categorized her past relevant position as a composite job, the "ALJ is not permitted to make an adverse step 4 finding that the claimant remains capable of performing a composite job 'as generally performed.'" Doc. 18 at 10. Rather, the ALJ must base an adverse finding at step four on whether the plaintiff could perform a composite job "as actually performed." Doc. 18 at 10.

Plaintiff is correct that an ALJ must analyze a plaintiff's past relevant work in a composite job "as actually performed instead of as generally performed in the national

14

economy." *Gunter v. Comm'r of Soc. Sec. Admin.*, No. 4:21-CV-783-BJ, 2022 WL 3219803, at *4 (N.D. Tex. Aug. 9, 2022) (Cureton, J.) (cleaned up). However, while Plaintiff concedes that "an adjudicator can deny a claim at step 4 where the claimant remains capable of performing a composite job as actually performed, Doc. 18 at 10 (cleaned up), she nevertheless disregards that here, the ALJ found that Plaintiff could perform the composite job "*both* as actually performed and as generally performed." Doc. 14-2 at 799 (emphasis added); *see also Brown v. Comm'r of Soc. Sec.*, No. 7:23-CV-84-O-BP, 2024 WL 4169173, at *3-4 (N.D. Tex. May 1, 2024) (Ray, J.) (affirming the Commissioner's determination that the plaintiff could perform a composite job "as actually and generally performed"), *adopted by* 2024 WL 3669476 (O'Connor, J.). And as the ALJ in the instant case explicitly found that Plaintiff was capable of performing the composite job as actually performed by Plaintiff, there was no error in the ALJ's determination.

Based on the foregoing, the Court finds no error in the ALJ's application of the law at step four and that the ALJ's conclusion that Plaintiff could perform her past relevant work is supported by substantial evidence.

## IV. CONCLUSION

For the forgoing reasons, the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on August 27, 2025.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).